IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

**CHRISTIAN BALLARD**, *et al.*,

                **Plaintiffs**,

v.

**NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION**, *et al.*,

                **Defendants.**

Case No. 14-cv-01267-CDP

## DEFENDANT NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION'S MOTION TO DISMISS

Defendant National Football League Players Association ("NFLPA" or "Union") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss, with prejudice, the First Amended Complaint ("FAC") in the above-captioned case.[1]

### PRELIMINARY STATEMENT

This past July, a class of retired National Football League ("NFL" or "League") players secured an uncapped settlement with the NFL to resolve claims that the League had concealed and misrepresented information about the risks and effects of traumatic brain injuries to NFL players. Now, in copy-and-paste fashion, some of the same Plaintiffs' counsel from the NFL Concussion Litigation have recycled and redirected those claims at the NFLPA—Plaintiffs' former Union—and two former NFLPA presidents (who are themselves former NFL players). In many instances, the FAC does nothing more than substitute "NFLPA" for "NFL." Moreover,

---

[1] The NFLPA moved to consolidate this action with Smith v. Nat'l Football League Players Ass'n, No. 14-cv-01559-ERW (E.D. Mo. opened Sept. 11, 2014) ("Smith"). See Mot. to Consolidate, ECF No. 15. As of this stipulated date for all Defendants—including Raymond Lester Armstrong, III and Kevin Mawae (collectively, "Defendants")—to file their responsive pleadings, there has been no ruling on whether to consolidate the two carbon-copy actions. Accordingly, the NFLPA, on the one hand, and Messrs. Armstrong and Mawae, on the other, have filed motions to dismiss in both actions. In filing this motion, the NFLPA preserves all affirmative defenses.

whereas in the NFL Concussion Litigation, Plaintiffs alleged, repeatedly, that the League was "**unilaterally**" responsible for player health and safety, here, they about-face and allege it was the Union's responsibility.  The upshot is a contradictory, incoherent complaint resting on the implausible premise that Plaintiffs' own Union defrauded, neglected, and conspired against its members on issues relating to head trauma and the risks of playing NFL football, despite having no motive to do so.  The FAC should be dismissed on multiple grounds.

**First**, although Plaintiffs label their causes of action as various state law torts, they all concern the Union's alleged failure to adequately represent Plaintiffs while they were NFL players (and thus Union members).  All of these claims thus present the question of whether the Union fulfilled its "duty of fair representation" to its members under the National Labor Relations Act ("NLRA").  Legions of Supreme Court, Eighth Circuit, and other precedents hold that such state law claims challenging a union's representation of its members are completely preempted under the NLRA.  This should be the beginning and end of the Court's analysis.

**Second**, to the extent that Plaintiffs try to rely on some alleged duty owed by the NFLPA **other than** the duty of fair representation, then, under Supreme Court precedent, Plaintiffs must point to the NFL-NFLPA Collective Bargaining Agreement ("NFL CBA") as the source of such a Union obligation.  However, this, too, would be a claim necessarily leading to the preemption of Plaintiffs' state law claims.  It is black letter labor law that all state law claims arising from, or requiring analysis of, CBAs are the exclusive province of federal labor law and completely preempted under Section 301 of the Labor Management Relations Act ("LMRA").

**Third**, even if none of Plaintiffs' claims were preempted, they still fail to state any plausible cause of action against the NFLPA for myriad reasons, including:

- Plaintiffs' whole theory of the case—that their former Union, operated and controlled by their peer NFL players, conspired to hurt its own player members—is totally

2

- implausible (resulting in former NFLPA Presidents Armstrong and Mawae being both defendants **and putative class members** in the lawsuit);

- Plaintiffs are judicially estopped from relying in the FAC on factual assertions contrary to what their counsel alleged in the NFL Concussion Litigation;

- Plaintiffs implausibly rely on alleged Union misconduct that could not have contributed to their alleged injuries; and

- Plaintiffs rely on a Union workplace safety duty that does not exist as a matter of law.

For all of these reasons, and as set forth below, the FAC should be dismissed with prejudice.

## BACKGROUND

### A.   The NFL Concussion Litigation[2]

In connection with their representation of Curtis McClinton, Jr. in the NFL Concussion Litigation, certain of Plaintiffs' counsel filed a short-form complaint adopting the factual allegations set forth in the Master NFL Complaint.[3]  There, a group of former NFL players alleged that the NFL "ignored, minimized, disputed, and actively suppressed broader awareness of the link between sub-concussive and concussive injuries in football and the chronic neuro-cognitive damages, illnesses, and decline suffered by former players . . . ." Master NFL Compl. ¶¶ 4-5.  The theory of the case was that the NFL purposely misled NFL players (who were all Union members) about the health risks posed by head trauma so that the NFL could continue profiting from violence in its sport.  Id. ¶¶ 22-23.  Plaintiffs repeatedly alleged that the NFL—not

---

[2] This Court should take judicial notice of the filings, including Plaintiffs' Amended Master Administrative Long-Form Complaint ("Master NFL Complaint"), ECF. No. 2642, in In re Nat'l Football League Players' Concussion Injury Litig., No. 12-md-02323-AB (E.D. Pa.) ("NFL Concussion Litig."). See Great Plains Trust Co. v. Union Pac. R. Co., 492 F.3d 986, 996 (8th Cir. 2007) ("we may take judicial notice of proceedings in other courts that relate directly to matters at issue"); see also 21B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Rule 201 (2 ed.).

[3] Short Form Complaint, ECF No. 4635, NFL Concussion Litig.

3

the NFLPA—bore **"unilateral"** responsibility for NFL player safety.[4]  Those factual allegations are consistent with settled law: "Under the common law, [] it is the **employer**, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace."  Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 (1987) (emphasis in original).

The allegations in the Master NFL Complaint in large part centered on alleged misconduct perpetrated by the NFL Mild Traumatic Brain Injury ("MTBI") Committee.  It alleged that the MTBI Committee was a sham, created by the NFL—not the NFLPA—to conduct bogus research on brain trauma and promote propagandized research refuting the scientific consensus about the risks of playing in the NFL.  Master NFL Compl. ¶¶ 148-153.  Plaintiffs further alleged that it was the NFL—not the NFLPA—that "voluntarily and unilaterally" formed the MTBI Committee, and that it was the NFL—not the NFLPA—that hired and controlled the members of that committee.  Id.

In July 2014, retired NFL players preliminarily settled the NFL Concussion Litigation for an uncapped amount estimated to approach $1 billion.  Later that month, apparently in search of a new pocket to sue, Plaintiffs here filed this suit, in which the NFL has vanished as the unilateral perpetrator of the conduct at issue, and the NFLPA substituted in its place.

**B.     The FAC Claims**

The FAC alleges the same facts, and asserts the same causes of action—state law Counts labeled as fraud and negligence, plus a Count for civil conspiracy—as the Master NFL

---

[4] Master NFL Compl. ¶¶ 10 ("While the NFL has assumed voluntarily its role as the **unilateral guardian of player safety** . . . "), 86 ("From its inception, the NFL **unilaterally created for itself the role of protecting players** . . . "), 89 ("Combined with the NFL's **unilateral and monopolistic power to set rules and determine policies** . . . "), 90 ("the NFL **unilaterally assumed a duty to act in the best interests of the health and safety of NFL players** . . . ") (emphases added).

4

Complaint in the NFL Concussion Litigation.[5]  The only meaningful difference is the replacement of the NFL and its related parties as the wrongdoers with the three new Defendants: the NFLPA and two of its former player-Presidents.  Plaintiffs seek to represent a class of "[a]ll former or retired [NFL] players."  FAC ¶ 29.  Thus, Defendants Armstrong and Mawae are simultaneously defendants and putative class members, i.e., simultaneously perpetrators and victims of the alleged misconduct.  Id. ¶¶ 18-19, 29.

The FAC is flatly at odds with the allegations in the Master NFL Complaint.  For example, in alleging that the NFLPA owed Plaintiffs duties concerning health and safety, Plaintiffs have completely reversed course from the Master NFL Complaint allegations that such duties were the "unilateral" responsibility of the NFL.  Supra.  As another example, whereas the Master NFL Complaint alleged that the NFL hired the MTBI Committee doctors, Plaintiffs now substitute "NFLPA" for "NFL" to allege the exact opposite.  Compare:

- Master NFL Complaint ¶ 373: "The NFL breached its duty to the Plaintiffs and the general public by hiring [the MTBI Committee] . . . ."

- FAC ¶ 170: "The NFLPA breached its duty of reasonable care to the general public and to Plaintiffs by hiring [the MTBI Committee] . . . ."[6]

Indeed, a comparison of the two complaints quickly reveals that this action is an implausible, bad faith copy-and-paste of the Master NFL Complaint, with the wholly contradictory substitution of the NFLPA as the responsible party when it was previously alleged

---

[5] Compare Master NFL Compl. ¶¶ 249-266, 273-286, 287-302, 303-319, 352-365, 370-375, 376-382, 422-425, with FAC ¶¶ 113-123, 124-134, 135-152, 153-166, 167-174, 175-183, 184-200, 201-204.

[6] Compare also Master NFL Compl. ¶ 150 ("Through its voluntary creation of the MTBI Committee, the NFL . . . "), ¶¶ 158-162 (NFL appointed Committee members), ¶ 372 ("it [the NFL] hired [the MTBI Committee]"), ¶ 378 (same), with FAC ¶169 (". . . it [the NFLPA] hired [the MTBI Committee]"), ¶ 171 ("The NFLPA knew or should have known that the persons it hired were unqualified . . . "), ¶ 172 (". . . the NFLPA hired those persons . . . "), ¶ 177 (same as ¶ 169), ¶¶ 179-181 (NFLPA breach duty of reasonable care by hiring people it knew, or should have known, were unqualified).

5

that all responsibility resided with the NFL.  The following is yet another example of Plaintiffs' pleading tactics:

- Master NFL Complaint ¶ 178: "Other contrary conclusions that the MTBI Committee published at the behest, urging, and sponsorship **of NFL** over several years include, but are not limited to, the following . . . ."

- FAC ¶ 69: "Other conclusions contrary to the weight of scientific evidence that the MTBI Committee published at the behest, urging, and sponsorship **of the NFLPA** over several years include, but are not limited to, the following . . . ."

The FAC does not allege or purport to explain what plausible motive the NFLPA would have had to hurt its own members and officers.  Nor does the FAC allege how or why the players' Union—controlled by the players themselves—would conspire to hurt its own members when the undisputed purpose of the Union was, and is, to represent and benefit its player membership.

### C.     The FAC Challenges the NFLPA's Conduct Representing Union Members

The FAC claims are labeled as state law Counts of fraud, negligence, and conspiracy.  In reality, they are a frontal attack on the actions which the NFLPA allegedly took or refrained from taking in representing Union members, like Plaintiffs, along with rights and duties allegedly owed to Plaintiffs as former Union members under the NFL CBA.  For example, the duty purportedly owed to Plaintiffs under their negligence Counts is alleged to have specifically arisen out of their former Union membership:

> Defendants . . . assured Plaintiffs that, **as dues-paying members of the NFLPA, Defendants would protect Plaintiffs and other players' best interests and owed to Plaintiffs a fiduciary duty**.[7]

Similarly, Plaintiffs' fraud and misrepresentation Counts rest on an alleged Union duty to

---

[7] FAC ¶ 21 (emphasis added).  The Court may also take judicial notice of Plaintiffs' counsel's similar, public statement that: "**Considering the millions of dollars received as dues from NFLPA members, the NFLPA did not do enough to protect its members from traumatic brain injury**." http://www.nflinjurylawsuits.com/ (quoting Kevin Regan, attorney for Plaintiffs) (emphasis added).

6

disclose to its members, and purported reliance by Plaintiffs, on the acts taken or not taken by their former Union. See FAC ¶¶ 113-123, 124-134, 135-152.

Indeed, all of the claims in the FAC are unambiguously directed at the labor law conduct of the NFLPA in representing Plaintiffs as the exclusive collective bargaining representative of "dues-paying members of the NFLPA." FAC ¶ 21. Allegations about the NFLPA's "duty" to such members, and promises to "protect" "members of the NFLPA" (id.), necessarily are directed at the NFLPA's duty to fairly represent NFL players. That representational duty included the Union's former representation of Plaintiffs in collective bargaining with the NFL. As Plaintiffs' counsel publicly stated after filing this action:

> Many of these former players have questions about . . . **the NFLPA's relationship with the NFL, and the NFLPA's failure to acknowledge a problem and failure to call the NFL out on these serious health issues.**[8]

"Questions" of this type go to the heart of the Union's collective bargaining relationship with the NLF and its labor law duty to fairly represent its player-members.

## LEGAL ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). This requires more than a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Rather, plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., and it "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

---

[8] http://www.nflinjurylawsuits.com/faq (emphasis added).

I. **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY ARE ALL PREEMPTED BY FEDERAL LABOR LAW**

   A. **Plaintiffs' Claims Are Preempted Under the NLRA**

Sections 8(b) and 9(a) of the NLRA, 29 U.S.C. §§ 158(b) and 159(a), authorize a union to act as the exclusive representative of all employees in its bargaining unit in dealing with employer management. The Supreme Court has held that the NLRA requires a union to represent its members "without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967).[9] "Th[is] duty of fair representation generally governs a union's conduct vis-a-vis the bargaining unit members when the union is representing them." Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1166 (5th Cir. 1989), cert. denied, 495 U.S. 946 (1990).

It is settled labor law that, even if labeled as state law torts, claims that challenge a union's duties to its members are, in substance, challenges to a union's duty of fair representation. Such claims are completely preempted "because of the congressional intent that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes." Id. at 1169-70; see also Adkins, 526 F.3d at 539 ("The federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."); BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir.

---

[9] The duty of fair representation, though not without limits, gives broad discretion to unions in carrying out their representational function. See, e.g., Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008).

1997) ("federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit . . . ").

Accordingly, state tort claims brought by union members against their union, such as those in the FAC, are completely subsumed within the duty of fair representation and routinely held to be preempted. See, e.g., Adkins, 526 F.3d at 541 (duty of fair representation preempted fraud, negligence, and conspiracy claims); Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1158 (10th Cir. 2000) (preempting civil conspiracy claim); BIW Deceived, 132 F.3d at 833-34 (preempting negligence and fraud claims); Parker v. Connors Steel Co., 855 F.2d 1510, 1517 (11th Cir. 1988) (preempting fraud claims).[10]

This settled labor law principle requires dismissal of the FAC. Its various state law claims indisputably challenge the NFLPA's representation of Plaintiffs **as Union** members. Indeed, Plaintiffs do not allege that the NFLPA owed duties to anyone other than Union members on matters of health and safety. For example, Plaintiffs do not, and could not, allege that the NFLPA had a duty to warn college, high school, or backyard football players about the risks of head trauma because of the NFLPA's allegedly "superior" knowledge on this subject. Rather, the FAC rests solely on alleged NFLPA duties to "dues-paying members." FAC ¶ 21. Plaintiffs even appear to allege a conspiracy between the NFLPA and the NFL (the Union's

---

[10] See also, e.g., Gachett v. Retail Wholesale Dep't Store Union, No. 11-cv-398-MEF, 2013 WL 1336743, at *6 (M.D. Ala. Mar. 29, 2013); Pitts v. Plumbers Steamfitters Local Union No. 33, 718 F. Supp. 2d 1010, 1017-19 (S.D. Iowa 2010); Chamernick v. United Steelworkers of Am., Local 2660, No. 08-6475 (JNE/RLE), 2009 WL 1209467, at *4 (D. Minn. May 1, 2009); Taylor v. Giant Food Inc., 438 F. Supp. 2d 576, 583 (D. Md. 2006); Carr v. Local Union 1593, 326 F. Supp. 2d 999, 1003 (D.N.D. 2004); Cahoon v. Int'l Bhd. of Elec. Workers Local 261, 175 F. Supp. 2d 220, 223 (D. Conn. 2001); Madison v. Motion Pictures Set Painters & Sign Writers Local 729, 132 F. Supp. 2d 1244, 1258-59 (C.D. Cal. 2000); Oliva v. Wine, Liquor & Distillery Workers Union, Local One, 651 F. Supp. 369, 371 (S.D.N.Y. 1987); Billy Jack For Her, Inc. v. N.Y. Coat, Suit, Dress, Rainwear & Allied Workers' Union, ILGWU, AFL-CIO, 511 F. Supp. 1180, 1193 (S.D.N.Y. 1981).

9

collective bargaining counterpart)—it is hard to imagine a claim more fundamentally an issue of federal labor law.

It also is of no consequence that Plaintiffs are now retired from the NFL. The FAC's claims each challenge the NFLPA's alleged duties and conduct **while Plaintiffs were still playing**:

- Defendant promised to protect Plaintiffs "**as dues-paying members of the NFLPA**," i.e., while they were still playing in the NFL and Union members (FAC ¶ 21);

- Defendant's alleged conduct "exposed Plaintiffs to dangers they could have avoided or mitigated"—such "dangers" occurring, of course, **while** Plaintiffs were playing in the NFL, not after they retired (id. ¶ 4);[11] and

- "Defendants' fraud and misrepresentations prevented Plaintiffs from making a knowledgeable decision on **continuing** their careers" (id. ¶ 187) (emphases added throughout).[12]

Put another way, Plaintiffs' contention is that if the NFLPA had done a better job representing them **while they were still in the NFL** (i.e., while they were Union Members), they might have made different choices at that time about returning to the field of play, "continuing their careers," (id.), and allegedly "avoided or mitigated" harm (id. ¶ 4). This is a duty of fair representation complaint and compels preemption and dismissal as a matter of law.

### B. Claims Based on Any Other Union Duty Must Arise out of the NFL CBA and Are Therefore Preempted Under LMRA Section 301

Plaintiffs argue that the NFLPA owed them duties beyond the NLRA duty of fair representation. However, any such duty would have to derive from the NFL CBA and therefore

---

[11] Plaintiffs repeatedly cite to the "multiple repetitive traumatic head impacts and concussions" suffered by each individual Plaintiff **during practices and games**, and for which each was "never treated **as a player**." FAC ¶¶ 7, 11, 15 (emphases added).

[12] The Court may again take judicial notice of the public statements of Plaintiffs' counsel: "They believe the NFLPA had a duty to inform them of the risks of concussions and repetitive concussive and subconcussive hits to the head so that they could have made a more informed decision about when to return to play and the risks posed to their health and future." http://www.nflinjurylawsuits.com/faq/.

10

gets Plaintiffs nowhere because claims dependent on the NFL CBA are preempted under Section 301 of the LMRA.

In United Steelworkers v. Rawson, 495 U.S. 362, 373 (1990), the Supreme Court stated that, "as a matter of federal law," it has never held that "a labor union is prohibited from voluntarily assuming additional duties to the employees **by contract**," referring to a collective bargaining agreement.[13] The FAC, however, never mentions any such contract for good reason: the only contractual source of an NFLPA employee safety duty would have been the NFL CBA and its myriad player health and safety provisions.[14] But Plaintiffs know that any state law claims arising out of, or requiring interpretation of, the NFL CBA would be completely preempted under Section 301. See generally Caterpillar Inc. v. Williams, 482 U.S. 386 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-13 (1985); Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331-32 (8th Cir. 2006).

There is thus no way for the Plaintiffs to avoid preemption of their state law claims by arguing that the NFLPA assumed some contractual duty in the NFL CBA beyond the duty of fair representation. See, e.g., Atwater v. NFLPA, 626 F.3d 1170, 1176 (11th Cir. 2010) (holding retired NFL players' negligence, negligent misrepresentation, and fiduciary breach claims preempted by Section 301 and stating that "[t]he status of . . . Plaintiffs as retirees does not change this [preemption] analysis."); Smith v. Houston Oilers, 87 F.3d 717, 718-20 (5th Cir.

---

[13] Rawson further states: "If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." Id. at 374. See also Hechler, 481 U.S. at 860 (labor unions "may assume a responsibility towards employees by accepting a duty of care **through a contractual arrangement**," but the threshold inquiry for determining independent cause of action for breach "is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties."); Adkins, 526 F.3d at 539.

[14] See, e.g., Articles 39, 50, 58-9, 61-65. The Court may take judicial notice of the NFL CBA, which is widely available, and found online at: https://www.nflplayers.com/about-us/CBA-Download/.

11

1996) (Section 301 preempted players' state law tort claims: "[The] alleged misconduct cannot be separated from the underlying dispute . . . [it] is fundamentally a labor dispute."); Williams v. NFL, 654 F. Supp. 2d 960, 966 (D. Minn. 2009) (holding that "Section 301 preempts nearly every state cause of action involving a collective bargaining agreement" and finding Minnesota common law claims preempted by NFL CBA), aff'd, 598 F.3d 932 (8th Cir. 2009).  In short, whether viewed as a challenge to the Union's duty of fair representation, or as a challenge to some additional contractual duty allegedly assumed by the Union under the NFL CBA, Plaintiffs' state law claims are preempted and must be dismissed.

### C. Plaintiffs' Labor Law Claims Should Be Dismissed with Prejudice

Because Plaintiffs have pled only state law causes of action, and they are all preempted, the FAC should be dismissed.  Moreover, even if Plaintiffs were to re-plead federal duty of fair representation and/or Section 301 claims, those claims were time-barred long ago under the governing six-month statute of limitations.[15]  Indeed, the carbon copy Master NFL Complaint was filed over two years ago.  Nor could Plaintiffs possibly allege facts to state a plausible duty of fair representation claim given the broad discretion afforded to unions in representing their members.  See supra n.9.  For both of these reasons,  further amendment would be futile, and a finding of preemption should result in dismissal with prejudice.

### II. EVEN IF PLAINTIFFS' CLAIMS WERE NOT HELD TO BE PREEMPTED, PLAINTIFFS HAVE STILL FAILED TO STATE AN ACTIONABLE CLAIM

Wholly apart from preemption, Plaintiffs have not—and cannot—plead a plausible claim

---

[15] See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169 (1983); Peterson v. Kennedy, 771 F.2d 1244, 1251 (9th Cir. 1985) (Supreme Court has held that six-month statute of limitations apply to DFR claims against a union); Banks v. Ameren UE, No. 05-cv-00477-JCH, 2005 WL 2176927, at *3 (E.D. Mo. Sept. 8, 2005) (citing Vaca, 386 U.S. at 177) (state tort claims subsumed into the [DFR] are time-barred because they were brought outside six-month statute of limitations period); see also Williams v. George P. Reintjes Co., Inc., 361 F.3d 1073, 1074 (8th Cir. 2012) (six-month statute of limitations applicable to LMRA claims).

under Twombly for numerous reasons.

### A.     Plaintiffs' Case Theory Is Implausible on Its Face

Plaintiffs' mere substitution of the NFLPA for the NFL as the target of the player safety allegations of the Master Complaint is factually implausible.  The FAC is devoid of any allegation or explanation about **why** Plaintiffs' former Union would defraud, neglect, and conspire against its own player membership on issues of safety.  It is one thing to accuse the NFL—which sits on the opposite side of the bargaining table from the players—of concealing information about player safety, but quite another for former players to accuse their own Union of concealing and falsifying information to hurt players.  The FAC's premise is so preposterous that it has former NFLPA Presidents Armstrong and Mawae as defendants committing tortious acts **and** as victims of those acts (not to mention putative class members).  There simply is no plausible allegation advanced as to why the NFLPA would conceal information about player safety from its own player members, who controlled the Union, elected its leadership, and set the Union's agenda.

### B.     Plaintiffs' Core Factual Allegations Cannot Be Credited Under the Doctrine of Judicial Estoppel

Plaintiffs are judicially estopped from alleging different facts here than their counsel did in the NFL Concussion Litigation, and thus Plaintiffs should not be able to stave off dismissal based on complaint allegations that contradict what their counsel previously alleged.[16]  Plaintiffs' allegations that the NFLPA owed Plaintiffs duties on the subject matter of head trauma, that the NFLPA hired the MTBI doctors, that the NFLPA directed the MTBI Committee to promote false

---

[16] Judicial estoppel provides a basis for dismissal under Rule 12(b)(6).  Copeland v. Hussmann Corp., 462 F. Supp. 2d 1012, 1019 (E.D. Mo. 2006) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).  As set out in this Memorandum, Plaintiffs' allegations are "clearly inconsistent" with those in the Master NFL Complaint; that prior position was successful in driving an uncapped settlement that won court approval, and was premised upon the NFL's position as "unilateral" guardian of player safety.

science, and that Plaintiffs relied on the NFLPA on such subjects,[17] thus should not be credited as "well-pled" facts on this Rule 12(b)(6) analysis.  Accordingly, Plaintiffs have virtually no facts with which to state any claim against the NFLPA.[18]

> **C.      The FAC Rests on Alleged Conduct Which Could Not Have Caused Plaintiffs' Alleged Injuries**

As discussed above, the liability theory of the FAC is that, had the NFLPA not committed the alleged wrongdoing, then Plaintiffs would have made better-informed choices, as NFL players, about when to return to the field of play and whether to continue their playing careers.  Supra Section I.A.  But virtually all of the purported misconduct alleged in the FAC occurred **after** Mr. Westbrooks had already retired, FAC ¶ 14, and, as a result, he cannot claim that any of the NFLPA's alleged false statements or negligent acts actually harmed him.  Mr. Ballard, meanwhile, entered the League in 2011, id. ¶ 6, and by that time, the NFL had "come clean" about the risks that playing football and head trauma posed to NFL players, so there could be no injury to Mr. Ballard, who was on notice, either.  See Master NFL Compl. ¶¶ 220-233 (alleging that the NFL acknowledged the concussion crisis in 2010).  And, as for Mr. Horn, the FAC does not contain a single allegation about any alleged misstatement upon which he purportedly relied.

> **D.      The NFLPA Has No Legal Duty to Provide a Safe Workplace**

Virtually all of the Counts of the FAC rest on the premise that the NFLPA had a duty to ensure its members a safe working environment.[19]  The Supreme Court, however, has held "it is

---

[17] See supra at 5; supra at 5 n.6; supra at 6; supra at 4 n.4; compare Master NFL Compl. ¶¶ 86-87, 153, ¶ 332 with FAC ¶ 25, ¶ 128, ¶ 157.

[18] For example, Plaintiffs should be judicially estopped from alleging that the NFLPA hired the MTBI Committee doctors—dooming, of course, their Negligent Hiring (Count V) and Negligent Retention (Count VI) claims, which specifically concern the hiring and retention of the MTBI Committee doctors.

the **employer**, not a labor union, that owes employees" such a duty. Hechler, 481 U.S. at 859; Simpson v. Niagra Machine & Tool Works, No. 05-1122-CV-W-FJG, 2006 WL 181954, at *2 (W.D. Mo. Jan. 26, 2006) (same under Missouri law).  Thus, the alleged NFLPA duty that Plaintiffs' claims rely upon does not exist as a matter of law.

### E.     Plaintiffs Have Failed to State Any Fraud-Based Claim

Plaintiffs were required to plead their Fraud, Negligent Misrepresentation, and Fraudulent Concealment Counts with the specificity required by Rule 9(b).[20]  This includes specifically pleading reliance.  Green v. Ariz. Cardinals Football Club LLC, No. 14-cv-461-CDP, 2014 WL 1920468, at *7 (E.D. Mo. May 14, 2014).  But Plaintiffs have failed to allege they even knew about—much less relied upon—any allegedly false statement.  Plaintiffs' have thus failed to plead specific facts of reliance in addition to the other elements of fraud as required by Rule 9(b).

### F.     Plaintiffs Allege Insufficient Facts to Support Their Civil Conspiracy Count

Plaintiffs allege a Count for civil conspiracy—but the FAC provides no allegation (or clue) as to how, when, where, or why the NFLPA supposedly conspired with the NFL.

### G.     Missouri Does Not Recognize a Cause of Action for Medical Monitoring

Finally, in Missouri, Medical Monitoring does not even exist as a cause of action in this context.  See Ratliff v. Mentor Corp., 569 F. Supp. 2d 926 (W.D. Mo. 2008).

### CONCLUSION

For all of  the foregoing reasons, the NFLPA respectfully requests that this Court dismiss the FAC with prejudice.  None of the aforementioned defects can be cured.

---

[19] E.g., Count I (Fraudulent Concealment), ¶ 117; Count IV (Negligence), ¶ 159; Count V (Negligent Hiring), ¶ 169; Count VI (Negligent Retention), ¶ 177; Count VII (Medical Monitoring), ¶ 192.

[20] Kushner v. Beverly Enters., Inc., 317 F.3d 820, 826 (8th Cir. 2003); Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995).  Rule 9(b) applies to negligent misrepresentation, too.  See Leonard v. BASF Corp., No. 03-cv-0485-TCM, 2006 WL 3702700, at *6-7 (E.D. Mo. Dec. 13, 2006).

Dated:  October 24, 2014                        Respectfully Submitted,

/s/ James G. Martin
James G. Martin (MO #33586)
Willie J. Epps, Jr. (MO #46975)
DOWD BENNETT LLP
7733 Forsyth Blvd., Ste. 1900
St. Louis, MO 63105
Tel: (314) 889-7300
Fax: (314) 863-2111

/s/ Jeffrey L. Kessler
Jeffrey L. Kessler (*Pro Hac Vice*)
David L. Greenspan (*Pro Hac Vice*)
WINSTON & STRAWN LLP
200 Park Ave.
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

*Attorneys for Defendant NFLPA*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served by operation of the Court's CM/ECF system upon counsel for each party on October 24, 2014 in accordance with Local Rule 5 - 2.12.

Dated:  October 24, 2014               Respectfully Submitted,

/s/ James G. Martin
James G. Martin (MO #33586)
DOWD BENNETT LLP
7733 Forsyth Blvd., Ste. 1900
St. Louis, MO 63105
Tel: (314) 889-7300
Fax: (314) 863-2111