UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRISTIAN BALLARD, et al., )
)
      Plaintiffs, )
)
    vs. )  Case No. 4:14CV1267 CDP
)
NATIONAL FOOTBALL LEAGUE )
PLAYERS ASSOCIATION, et al., )
)
      Defendants. )

---

NEIL SMITH, et al., )
)
      Plaintiffs, )
)
    vs. )  Case No. 4:14CV1559 CDP
)
NATIONAL FOOTBALL LEAGUE )
PLAYERS ASSOCIATION, et al., )
)
      Defendants. )

## MEMORANDUM AND ORDER

These consolidated cases come before me on nearly identical motions to dismiss filed by the National Football League Players Association ("NFLPA") and two of its former presidents. The plaintiffs, who are former National Football League players and members of the NFLPA, brought counts based in fraud, civil conspiracy, and negligence. The fraud and civil conspiracy counts allege breaches

of the duty of fair representation and so are completely preempted by section 9(a) of the National Labor Relations Act. The negligence counts require an interpretation of collective bargaining agreements, and they are resultantly preempted by section 301 of the Labor Management Relations Act. Both sets of preempted claims are untimely, and they will be dismissed. Finally, the plaintiffs assert a count for medical monitoring, which is derivative of the other counts and will also be dismissed. The defendants' motions will be granted.

## Background

Plaintiffs are former players (collectively, "Players") for various National Football League (NFL) teams whose careers ranged from 1975 to 2012. They brought two separate cases against their union, the National Football League Players Association (NFLPA), and two of its former presidents, Kevin Mawae and Raymond Lester Armstrong, III (the "Individual Defendants").

The *Ballard* case, No. 4:14CV1267 CDP, is a putative class action brought in this District by Christian Ballard (who played from 2011–2012), Joe Horn (1996–2007), and Gregory Westbrooks (1975–1981). The *Smith* case, No. 4:14CV1559 CDP, was brought in state court by thirteen players: Neil Smith (1988–2000), Ladell Betts (2002–2010), Anthony Davis (1993–2010), Vaughn Booker (1994–2002), Ron Dugans (2000–2002), Sheddrick Gurley (2002), Chad Johnson (formerly Chad Plummer, 1999–2001), Kendyll Pope (2004–2005), Corey

Sawyer (1994–1999), Shevin Smith (1998–2000), Tarlos Thomas (2002), Tamarick Vanover (1995–1999, 2002), and Kevin Williams (1999–2001). Players in both cases assert nearly identical claims for fraudulent concealment, fraud, negligent misrepresentation, negligence, negligent hiring (against the NFLPA only), negligent retention (against the NFLPA only), medical monitoring, and civil conspiracy.

The *Smith* defendants removed that case to this court, and the Honorable E. Richard Webber denied the *Smith* players' motion to remand. *See Smith v. Nat'l Football League Players Ass'n*, No. 4:14CV1559 ERW, 2014 WL 6776306, at *1 (E.D. Mo. Dec. 2, 2014), ECF No. 34. In that Order, Judge Webber held that the *Smith* players' claims for fraudulent concealment, fraud, and civil conspiracy were preempted by the duty of fair representation under the National Labor Relations Act. Judge Webber also found that the *Smith* players' claims for negligent misrepresentation were preempted under section 301 of the Labor Management Relations Act. Thereafter, the *Smith* case was transferred to me and consolidated with the *Ballard* case for pretrial purposes.

In both the *Ballard* and *Smith* pleadings, the substantive allegations are nearly identical.[1] During their respective careers, Players suffered multiple

---

[1] The primary differences relate to the residency and work history of the individual Plaintiffs and the class allegations in *Ballard*.

repetitive traumatic head impacts and concussions during practices and games. These injuries were neither acknowledged nor treated while Plaintiffs were players. Players paid money throughout their careers to the NFLPA as association dues. The NFLPA assured Players they would protect them and owed them a fiduciary duty, stating that they would act in Players' best interests at all times. However, the NFLPA did not spend significant funds on research into ways to mitigate or prevent brain trauma, such as developing safer helmets, competition rules, or football equipment. The NFLPA also failed to certify medical personnel that treated NFL players, despite having a duty to do such.

Players allege that the Defendants were in a superior position of knowledge, and they knew the dangers and risks associated with repetitive head impacts and concussions. They attained this knowledge from the NFLPA's own medical consultants and commissioned studies on the subject, the NFLPA's participation in the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, and the NFLPA's participation in the Mild Traumatic Brain Injury Committee. Despite that superior knowledge, the Defendants knowingly concealed the information from the Players and fraudulently misrepresented there was no link between head impacts and cognitive decline. The Players allege that these actions caused or contributed to cause Players to suffer long-term neuro-cognitive injuries, including dementia, depression, memory loss, and chronic traumatic

encephalopathy ("CTE"), a condition caused by repetitive sub-concussive and/or concussive blows to the head. The Players allege that by concealing or omitting information, the Defendants caused Players to ignore the need for treatment.

In both cases, the NFLPA has filed nearly identical motions to dismiss, arguing that all the Players' claims allege that the NFLPA failed in its duty of fair representation and are thus preempted by the NLRA; that any duty beyond fair representation would necessarily emanate from the NFL-NFLPA collective bargaining agreements (CBAs) and, thus, are preempted by section 301 of the LMRA; and that the Players fail to state a claim. The Individual Defendants have also filed in both cases nearly identical motions to dismiss that incorporate the NFLPA's arguments as well as raise additional arguments, such as the absence of personal jurisdiction, that are tailored to their status as individuals.

## Discussion

The Defendants rely on CBAs attached as exhibits to their supplementary briefing in support of their motions to dismiss. A motion to dismiss pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court. *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (quoting *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999)). Where the extraneous documents are central to the plaintiff's case, such as the written contract in a

contract dispute, the court may examine the documents in deciding a motion to dismiss. *See Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)). This is so even, where the relevant contract documents are attached as exhibits to the motion to dismiss instead of to the pleadings. *See Rosenblum*, 299 F.3d at 661. A court may also consider any documents of which it has taken judicial notice, such as those in the public record. *Stahl*, 327 F.3d at 700.

The Defendants have requested that this court take judicial notice of the various CBAs that the NFLPA attached to its supplementary filings. Although the Players argue that I should treat the motions as motions for summary judgment under Rule 56, Fed. R. Civ. P., this is a case where analysis of the CBAs is necessary to decide whether a claim has been stated. I will take judicial notice of the CBAS.[2] *Cf. Dent v. Nat'l Football League*, No. C 14-02324 WHA, 2014 WL 7205048 at *2 (N.D. Cal. Dec. 17, 2014) (keeping motion as one to dismiss after taking judicial notice of CBAs where agreed by the parties and where necessary to rule on a Rule 12, Fed. R. Civ. P., motion).

## Legal Standards

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, the court

---

[2] *Ballard*, 4:14CV1267, ECF No. 38 Exs. 1–8; *Smith*, 4:14CV1559, ECF No. 45 Exs. 1–8.

assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). Matters of public record referenced in a complaint may be considered by the court in determining a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). The issue in determining a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Skinner v. Switzer*, 562 U.S. 521, 529–530 (2011) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

# Analysis

## *Fraudulent Concealment, Fraud, and Civil Conspiracy Claims*

In the Order denying remand in the *Smith* case, Judge Webber already determined that the *Smith* players' state-law claims for fraudulent concealment, fraud, and civil conspiracy were actually claims for breach of the duty of fair representation under section 9(a) of the National Labor Relations Act and were completely preempted. *Smith*, 2014 WL 6776306, at *6–10 & n.1. I find that analysis to be correct, and adopt it here:

> The duty of fair representation is the duty to act as the exclusive bargaining agent in a fair manner. *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46 (1979). This duty states "[a] union must represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements." *Id.* at 47. The duty of fair representation "arises . . . from the grant under section 9(a) of the NLRA . . . of the union's exclusive power to represent all employees in a particular bargaining unit." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 86–87 (1989). "'The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation.'" *Id.* at 88 (quoting *Humphrey v. Moore*, 375 U.S. 335, 342 (1964)). The NFLPA is bound by the duty of fair representation.
>
> "A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). This rule does not apply only to union actions with

> regards to the collective bargaining agreement. It applies to all union activity. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). If the NFLPA has acted towards members of the collective bargaining agreement in bad faith, it has breached the duty of fair representation.
>
> The complaint clearly alleges Defendants acted towards Plaintiffs, members of the collective bargaining unit at the time of the conduct, in bad faith, by alleging Defendants undertook fraudulent behavior against Plaintiffs. Any bad faith conduct by the union against a member of the collective bargaining unit is a breach of the duty of fair representation. The complaint does not state a claim on its face for breach of such a duty, but it is clearly present. All claims regarding bad faith by Defendants are claims of breach of the duty of fair representation.

*Smith*, 2014 WL 6776306, at *4 (noting that unlike the preempted counts for fraudulent concealment, fraud, and civil conspiracy, the remaining counts were for "mere negligence, which is not a breach of the duty of fair representation").

Players contend that their claims are independent of the duty of fair representation because they are retirees. However, Players' pleadings state that the NFLPA has known "for decades" that multiple blows to the head can lead to long-term brain injury.[3] They allege that they received those multiple head injuries while represented by the NFLPA as active players.[4] They also allege that the Players relied on Defendants' omissions and misrepresentations while they were

---

[3] *See* Ballard 1st Am. Class Action Compl., ECF No. 6 ¶ 37; Smith 1st Am. Pet., ECF No. 4 ¶¶ 118, 120.

[4] *See, e.g.*, Ballard 1st Am. Class Action Compl. ¶¶ 7, 11, 15, 20; Smith 1st. Am. Pet. ¶¶ 7, 27, 31, 60.

actively playing NFL football.[5] Thus, contrary to Players' arguments, the

pleadings allege that the claims arose during the course of each Players'

employment. At those times, the NFLPA would have owed them the duty to fairly

represent their interests, *see Vaca*, 386 U.S. at 177, and so the Players' claims are

not independent of that duty.

The Players next argue that "duty of fair representation" preemption under

sections 8(b) and 9(a) of the NLRA is mere "conflict" preemption – not complete

preemption – and thus dismissal is inappropriate. Although the Eighth Circuit has

not addressed the issue, I agree with Judge Webber's conclusion that federal law

completely preempts state regulation of claims that assert a breach of duty of fair

representation. *See Vaca*, 386 U.S. at 177 (holding that federal law governs duty

of fair representation claim); *see also Thomas v. Nat'l Ass'n of Letter Carriers*, 225

F.3d 1149, 1158 (10th Cir. 2000) (affirming summary judgment based on

preemption and statute of limitations); *Richardson v. United Steelworkers of Am.*,

864 F.2d 1162, 1165–67 (5th Cir. 1989) (affirming finding that federal law

governed and subsequent dismissal under the NLRA's six-month statute of

limitations).[6]

---

[5] Ballard 1st Am. Class Action Compl. ¶¶ 121, 132; Smith 1st. Am. Pet. ¶¶ 155, 166.

[6] The Players do not argue for the application of any of the exceptions to preemption set forth in *Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 296–97 (1977).

Defendants contend the duty of fair representation also completely preempts the Players' negligence, negligent misrepresentation, negligent hiring, and negligent retention claims.[7]  The Supreme Court has held that these sorts of claims do not state a claim for breach of duty of fair representation.  *See United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990) (citation omitted).  Those claims arising in negligence may be preempted nonetheless under section 301 of the LMRA.

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185.  The Supreme Court has held that any state law claim based upon rights created by a CBA is preempted under section 301.  *Trs. of Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–103 (1962)).  "[A]ny claim whose resolution is substantially dependent upon or 'inextricably intertwined' with interpretation" of the CBA terms is likewise preempted.  *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*,

---

[7] I refer to all defendants here, although the negligent hiring and retention claims are directed solely against the NFLPA.

471 U.S. 202, 213, 220 (1985)).  Unlike claims that require an interpretation of a CBA, those that merely reference the CBA are not preempted.  *Contrast Lividas v. Bradshaw*, 512 U.S. 107, 124–125 (1994) (finding claim free from section 301 preemption because wage formula need only be referenced to calculate damages) *with Allis-Chalmers*, 471 U.S. at 215–18 (finding common law fiduciary duty claim preempted because it required interpretation of CBA's contractual obligation of good faith).  *See also Superior Waterproofing*, 450 F.3d at 331 (providing additional preemption examples).  It is the defendant's burden to establish section 301 preemption, as it is the party asserting federal preemption.  *See Williams v. Nat'l Football League*, 582 F.3d 863, 880 (8th Cir. 2009).

In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff.  *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002).  "Unique among the elements of negligence is duty because the existence of a duty is a question of law."  *Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 131 (Mo. Ct. App. 1993).

The Players contend that the Defendants owe a duty independent from the duty of fair representation.  They allege that the Defendants possessed superior knowledge about the relationship between head impacts in football and brain

injuries and a "unique vantage point," obtained through the NFLPA's participation in the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan and in the Mild Traumatic Brain Injury Committee, studies commissioned by the NFLPA, and the NFLPA's own medical consultants. Players contend that this duty required Defendants to disclose their complete knowledge to Players.

Defendants argue that the Court must interpret the applicable CBAs in order to determine whether the NFLPA owed Players a duty and whether Players' reliance was justified. They cite to Article 39 of the 2011 CBA,[8] which reflects the NFL's recognition "that the NFLPA Medical Director has a critical role in advising the NFLPA on health and safety issues." *Id.* at art. 39 § 1(d). Article 39 also grants the NFLPA representation on the Accountability and Care Committee, which is charged with providing "advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs during the term of this Agreement." *Id.* at § 3. Defendants also cite to provisions in each of the CBAs that establish a Joint Committee,[9] which is composed of members of both the NFL and NFLPA. The Joint Committee traditionally has been tasked with examining subjects "related to professional football,"[10] including "player safety

---

[8] *Ballard*, 4:14CV1267, ECF No. 38-9; *Smith*, 4:14CV1559, ECF No. 45-9.

[9] *Ballard*, 4:14CV1267, ECF No. 38 Exs. 1–8; *Smith*, 4:14CV1559, ECF No. 45 Exs. 1–8.

[10] 1970 CBA art. V.

and welfare"[11] and reviewing "all current materials on the player safety aspects of player equipment . . . and other safety matters."[12] These CBAs also granted the NFLPA the right to employ consultants to assist in these tasks.[13]

<u>Negligent Misrepresentation</u>

The Players allege that the Defendants, in the course of business and because of a pecuniary interest, supplied false information regarding the risks of traumatic head impacts. They allege these misrepresentations occurred before, during, and after their playing years. Defendants note that the *Smith* players' negligent misrepresentation claim was already held to be preempted by section 301;[14] they argue that the same reasoning used by Judge Webber should apply to all the Players' claims.

Players allege that the NFLPA made public statements misrepresenting the risks of head injuries incurred while playing professional football. Under the common law, it is the employer that owes a duty to employees to exercise reasonable care in providing a safe workspace. *Int'l Bhd. of Elec. Workers, AFL-*

---

[11] 1977 CBA art. XI; 1993 CBA art. XIII; 1993 CBA (1995 amend.) art. XIII; 1993 CBA (1998 amend.) art. XIII.

[12] 1982 CBA art. XI; 1993 CBA (1998 amend.) art. XIII; 2006 CBA art. XIII.

[13] *See, e.g.*, 1977 CBA art. XI § 3; 1982 CBA art. XI § 3; 1993 CBA art. XIII § 1(b); 2006 CBA art. XIII; 2011 CBA art. 50 § 1(b).

[14] *See* No. 4:14CV1559, 2014 WL 6776306 at *9 (E.D. Mo. Dec. 2, 2014), ECF No. 34 (J. Webber).

*CIO v. Hechler*, 481 U.S. 851, 859 (1987).  The employer's duty includes a duty "to inform himself of those matters of scientific knowledge" that relate to the hazards of his business and to relay that knowledge to his employees.  *Marsanick v. Luechtefeld*, 157 S.W.2d 537, 541 (Mo. Ct. App. 1942).  The duty to provide safe a workplace does not extend to the employee's union, *Hechler*, 481 U.S. at 859, although the union may take on such a duty in a collective bargaining agreement.  *Cf. Rawson*, 495 U.S. at 373 (hypothesizing that unions might "assume duties traditionally viewed as the prerogatives of management") (citations omitted).

The NFLPA had a CBA-mandated advisory role, which at times required it to review current player safety materials.  The extent to which the Players were justified in relying on the NFLPA's statements will necessarily depend upon an interpretation of the various CBAs.  The claim of negligent misrepresentation is preempted by section 301 of the LMRA.

Negligence

The Players allege that the Defendants voluntarily studied and reported on neurocognitive injuries in former professional football players, thereby incurring the duty to exercise reasonable care when reporting their findings.  They allege that the Defendants breached that duty when they failed to publicize to the Players and to the public at large "the mounting evidence in the scientific literature" linking

- 15 -

football injuries to neuro-cognitive problems. This count differs from the negligent misrepresentation claim in that it relies on omissions rather than affirmative misrepresentations.

Nondisclosure constitutes a misrepresentation only where there exists the duty to disclose the omitted information. *Kesselring v. St. Louis Grp., Inc.*, 74 S.W.3d 809, 814 (Mo Ct. App. 2002). The duty to disclose arises either where there is a relation of trust and confidence between the parties or where one party has superior knowledge or information not within the fair and reasonable reach of the other party. *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993).

The Players contend that Defendants owed them a duty because Defendants possessed superior knowledge that was unavailable to the Players. But, the Players' own pleadings establish that the link between concussions and football-related head trauma and CTE was published in numerous medical journals, including the *Journal of the American Medical Association*, *Neurology*, *The New England Journal of Medicine*, *Lancet*, and *Neurosurgery* among others.[15] As such, the second potential source of duty under *Andes* is foreclosed to the Players, and they must rely on a relation of trust and confidence.

---

[15] Smith 1st. Am. Pet., ¶¶ 95, 107–08, 110; Ballard 1st Am. Class Action Compl., ¶¶ 61, 73–74, 76.

This brings the Players full-circle, for it is only through the CBA and the Defendants' status as Players' union (or as executives thereof) that such a relationship can exist. Indeed, any argument to the contrary is undermined by the Players' own pleadings. They alleged the NFLPA assured them that, "as dues-paying members of the NFLPA," it owed them a "fiduciary duty" and would act in their best interests at all times and that the NFLPA incurred its duty, in part, through its position on Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan.[16] The Retirement Board manages the Players' retirement plan and personal disability benefits. *See, e.g.*, 1970 CBA art. 6 (requiring the Retirement Board to develop medical standards to administrate disability benefits); 1977 CBA art. XXXI §§ 6, 8(d) (distinguishing disability benefits incurred from general injury from one that "results from a football injury incurred while an active player"); 2011 CBA art. LII (requiring that the benefit arbitrator apply procedures adopted by the Retirement Board when adjudicating disagreements over disability benefits). Any duty arising from the NFLPA's status as part of the Retirement Board or because of its fiduciary status will necessarily require an analysis of the various CBAs, as will a determination of the extent to which Players were justified in relying on the NFLPA's statements and omissions. As such, section 301 of the LMRA preempts the Players' claim for negligence.

---

[16] Smith 1st Am. Pet., ¶¶ 61–62, 69; Ballard 1st Am. Class Action Compl., ¶¶ 21–22, 36.

Negligent Hiring and Negligent Retention

The Players allege that the NFLPA negligently hired and retained persons to serve as its representatives on the Mild Traumatic Brain Injury Committee (the "MTBI Committee"), which was created by the NFL to research and study traumatic brain injuries affecting NFL players. They allege that the MTBI Committee attacked or attempted to suppress studies that linked CTE to concussions received by NFL players.[17] The Players allege that by interjecting themselves into the public discourse through the actions of the MTBI Committee, the NFLPA violated duties owed to NFL players and retired players as well as to the public at large. The Defendants argue that any duty owed to the Players must have arisen from the various CBAs, and so the two claims are preempted under section 301 of the LMRA.

The Players' negligent hiring and retention claims could survive section 301 preemption if they were based on a duty owed to the public at large. *Cf. Rawson*, 495 U.S. at 371. If, however, the duty underlying the torts was assumed in a CBA, then the claims are preempted. *Id.*

The pleadings allege that the MTBI Committee was formed by the NFL and staffed, in part, by the NFLPA, in order to opine on the effect of concussions

---

[17] Smith 1st Am. Pet., ¶¶ 93, 97–98, 105; Ballard 1st Am. Class Action Compl., ¶¶ 59, 63–64, 71.

suffered by NFL players.  Although the pleadings allege that the MTBI Committee produced findings that were deceptive to the NFL players and the public at large, they repeatedly state that the MTBI was focused on undermining studies relating to NFL players' response to concussions.  The CBAs contain numerous sections related to the creation by the NFLPA and NFL of a Joint Committee focused on the NFL players' safety and empowered to employ consultants.  *See, e.g.*, 1970 CBA art. V §§ 1, 4–5; 1977 CBA art. XI; 1982 CBA art. XI; 1993 CBA art. XIII; 1993 CBA (1995 amend.) art. XIII; 1993 CBA (1998 amend.) art. XIII; 2006 CBA art. XIII; 2011 CBA art. 50.  The 2011 CBA also created a joint Accountability and Care Committee tasked with providing advice and guidance regarding the preventative, medical, surgical, and rehabilitative care for players, including the development of an educational protocol to inform players of the primary risks associated with playing professional football and treatment of common injuries. 2011 CBA art. 39 § 3.  To the extent that the pleadings allege any duty by the NFLPA to properly staff the MTBI Committee, that duty appears to be one derived from the CBAs and not owed to the public at large.  The Players' negligent hiring and retention claims will necessarily depend upon an analysis of these provisions to determine whether the CBAs impose such a duty and whether they specify a standard of care.  As such, they are preempted by section 301.  *See Trs. of Twin*

*City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006)

The Players' claims are all either preempted or, in the case of their counts for medical monitoring, derivative of preempted claims.[18]  Duty of fair representation claims brought by a worker against a union are subject to a six-month statute of limitations.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170–72 (1983) (applying section 10(b) of the NLRA).  Section 301 of the LMRA likewise imposes a six-month statute of limitations.  *Williams v. George P. Reintjes Co.*, 361 F.3d 1073, 1074 (8th Cir. 2004).

The pleadings allege that the Defendants made misrepresentations and omissions as recently as December 2010.  They allege that by October 2011, the MTBI Committee had been replaced with a new committee that began making corrective statements regarding the validity of the MBTI Committees' studies.  Defendants argue – and Players do not dispute – that any preempted claims are time barred.  Because I find that the Players' claims are preempted and untimely, I need not address the additional arguments raised by Defendants.

Accordingly,

---

[18] Medical monitoring is merely a remedy, and so is derivative of other causes of action.  *See also Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 716–17 (Mo. banc 2007) (referring to medical monitoring as a form of damages); *see also Ratliff v. Mentor Corp.*, 569 F. Supp. 2d 926 (W.D. Mo. 2008) (limiting availability of medical monitoring to toxic tort claims).

**IT IS HEREBY ORDERED** that the NFLPA's motions to dismiss [*Ballard* # 21; *Smith* # 26] are granted.

**IT IS FURTHER ORDERED** that the motions to dismiss filed by individual defendants Armstrong and Mawae [*Ballard* # 22; *Smith* # 27] are granted.

Judgments in favor of the defendants are entered separately this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of August, 2015.